02-10-132-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00132-CR

 

 


 
 
 Cody Lee Horner
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM THE 415th
District Court OF Parker
COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

          Appellant
Cody Lee Horner appeals his conviction for possessing less than one gram of
methamphetamine.[2] 
In three points, he contends that the evidence is insufficient to sustain his
conviction, that the trial court erred by denying his motion to suppress, and that
the court abused its discretion by denying his motion for mistrial.  We affirm.

Background
Facts

          One afternoon
in October 2008, Anne Hollis, who is an officer with the Parker County
Sheriff’s Office (PCSO), went to a house near Agnes to serve an arrest
warrant on Linda Scroggins.  Officer Hollis called for backup when she saw a
woman matching Scroggins’s general description peering out from a window.[3]
Tim Oglesby, a PCSO investigator, met Officer Hollis at the house, and another
deputy also arrived there.  The three officers spent somewhere between fifteen
and thirty minutes knocking on the doors and windows of the house and
announcing their presence.  Although Officer Hollis heard movement by the
occupants of the house throughout the time that she knocked and announced, the
occupants did not overtly respond to her.  The officers eventually received
permission from a supervisor to force entry into the residence.

          After
entering the house and walking into the living room area, Investigator Oglesby
secured the two occupants of the house, appellant and Williamson, who were unsurprised
that the officers were there.[4] 
Investigator Oglesby noticed that the television in the living room was showing
video surveillance of the front of the house, including all of the officers’
cars.  After Investigator Oglesby looked for Scroggins but did not find her, he
asked appellant whether there was anything illegal in the house.  According to
Investigator Oglesby, appellant “said the only thing that he had in the house
was a bong.”

          Investigator
Oglesby obtained appellant’s verbal consent to search the house.[5] 
Appellant told Investigator Oglesby that the house was his and had belonged to
his family for several years.  In the bedroom that appellant had walked out of
when the officers entered the house, Investigator Oglesby discovered a lockbox
under a bed.  Investigator Oglesby asked appellant about the contents of the
lockbox, and appellant “just dropped his head.”  Appellant then instructed Williamson
“to get the key and open the box.”  Williamson retrieved the key to the lockbox
from a different box, and Investigator Oglesby opened the lockbox.  In it, he
found a large amount of baggies, glass pipes that may be used for consuming
drugs, straws that may be used to snort drugs, mechanical scales, and a film
canister containing a “crystal-type substance” that he believed to be methamphetamine.
 Investigator Oglesby took the lockbox and its items to an evidence room.  A
PCSO property clerk took the suspected drug to a lab, where a forensic
scientist found that the substance weighed .08 of a gram and contained
methamphetamine.

          A
grand jury indicted appellant for possessing less than one gram of
methamphetamine.  Appellant, who was represented by appointed counsel at trial,
pled not guilty, but the jury found him guilty.  During the punishment phase of
the trial, appellant pled true to two enhancement allegations, and after the
jury heard three witnesses testify (including appellant’s mother), it assessed appellant’s
punishment at ten years’ confinement.  The trial court sentenced him to the
same punishment, and he brought this appeal.

The
Sufficiency of the Evidence

In
his first point, appellant argues that the evidence is insufficient to sustain
his conviction.  To support a conviction for unlawful possession of a
controlled substance, the State must link the accused to the contraband by
proving that the accused exercised control, management, or care over the
contraband and knew that the substance he possessed was contraband.  See Tex.
Health & Safety Code Ann. § 481.002(38) (West 2010); Poindexter v. State,
153 S.W.3d 402, 405–06 (Tex. Crim. App. 2005) (explaining that the State must
show that the accused’s connection with the drug was more than fortuitous); Beall
v. State, 237 S.W.3d 841, 849 (Tex. App.—Fort Worth 2007, no pet.).

In
our due-process review of the sufficiency of the evidence to support a
conviction, we view all of the evidence in the light most favorable to the
prosecution to determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v.
State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  This standard gives
full play to the responsibility of the trier of fact to resolve conflicts in
the testimony, to weigh the evidence, and to draw reasonable inferences from
basic facts to ultimate facts.  Jackson, 443 U.S. at 319, 99 S. Ct. at
2789; Clayton, 235 S.W.3d at 778.

The
trier of fact is the sole judge of the weight and credibility of the evidence. 
See Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); Brown v. State,
270 S.W.3d 564, 568 (Tex. Crim. App. 2008), cert. denied, 129 S. Ct.
2075 (2009).  Thus, when performing an evidentiary sufficiency review, we may
not re-evaluate the weight and credibility of the evidence and substitute our
judgment for that of the factfinder.  Williams v. State, 235 S.W.3d 742,
750 (Tex. Crim. App. 2007).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@  Hooper v. State, 214 S.W.3d 9,
16–17 (Tex. Crim. App. 2007).  We must presume that the factfinder resolved any
conflicting inferences in favor of the prosecution and defer to that
resolution.  Jackson, 443 U.S. at 326, 99 S. Ct. at 2793; Clayton,
235 S.W.3d at 778.

          Appellant
argues that his alleged possession of methamphetamine is “negated by the
evidence of Angela Williamson that the drugs were hers and that [he] knew
nothing of them.”  Williamson, who was engaged to appellant at the time of his
arrest and at the time of the trial, testified to the following facts, among
others:

·       
the
items in the lockbox belonged to her, and appellant did not know of their
existence;

 

·       
she
had smoked methamphetamine a few times a week in the bathroom while appellant
was asleep;

 

·       
she
bought the drugs from “somebody [she] knew,” and appellant never knew that she
was buying drugs;

 

·       
 she
hid the lockbox, its key, and its contents from appellant because he “was
drug-free and [she] wasn’t[,] and [she] didn’t want to lose him”;

 

·       
she
told Investigator Oglesby at the scene that the items in the lockbox belonged
to her; and

 

·       
Investigator
Oglesby found and opened the lockbox himself, without consent, and he planted
drug paraphernalia in the lockbox.[6]

          Appellant
contends that Williamson’s testimony precluded the possibility that the jury
could have rationally found that he possessed methamphetamine.  Viewed in
isolation, Williamson’s testimony could have supported a finding that appellant
did not possess the methamphetamine.  Investigator Oglesby, however, gave
testimony that contradicted Williamson’s statements, and we must view the
evidence in the light most favorable to the jury’s verdict.  See Clayton,
235 S.W.3d at 778.  In weighing the conflicting evidence, the jury was charged
with resolving the witnesses’ credibility.  Id at 779.; see Dotson v.
State, 146 S.W.3d 285, 295 (Tex. App.—Fort Worth 2004, pet. ref’d)
(explaining that a jury is free to “accept or to reject all or part of . . .
defensive evidence”).  The jury’s guilty verdict indicated that it disbelieved
Williamson’s testimony.  See Saxton v. State, 804 S.W.2d 910, 914 (Tex.
Crim. App. 1991); see also Baker v. State, No. 02-10-00079-CR, 2010 WL
4813117, at *6 (Tex. App.—Fort Worth Nov. 24, 2010, pet. ref’d) (mem. op., not
designated for publication) (“By returning a guilty verdict, the jury indicated
its choice to believe the State’s witnesses . . . .”).

Appellant’s
only challenge to the sufficiency of the evidence involves the competing
testimony of Investigator Oglesby and Williamson.  Nonetheless, apart from that
issue, we conclude that the conviction was adequately supported by
circumstantial evidence.  When police discover contraband in an area not
possessed exclusively by the accused, additional independent facts can
establish a link between the accused and the contraband.  See Beall, 237
S.W.3d at 849–50.  These facts may be direct or circumstantial, and their total
number is less significant than the logical force of the link they establish.  Id.
at 850.  In Beall, we concluded that the evidence was sufficient to
sustain a conviction for possession of methamphetamine when the accused made
incriminating statements to the police.[7] 
Id.

          Investigator
Oglesby testified that when he asked appellant about the contents of the
lockbox, “[appellant] just dropped his head.”  Investigator Oglesby interpreted
this action as “a sign of guilt.”  This evidence provided a rational reason for
the jury to infer that appellant knew of the methamphetamine in the lockbox.  See
Hooper, 214 S.W.3d at 16 (defining a permissible inference as “a conclusion
reached by considering other facts and deducing a logical consequence from
them”).

Next,
the officers testified that they repeatedly knocked on all parts of appellant’s
house and announced their presence for no less than fifteen to twenty minutes
before they forced entry into the house.  The jury could have reasonably
inferred that appellant and Williamson were attempting to hide evidence of the
methamphetamine during that time.  Also, the lockbox was found in the bedroom
that appellant had been in before he went to the living area of the house.  According
to Investigator Oglesby, after appellant dropped his head in response to
Investigator Oglesby’s question, appellant instructed Williamson to get the key
and open the lockbox for Oglesby.  The jury could have rationally determined
that this evidence established appellant’s control of the lockbox, and the jury
could have therefore inferred that appellant knew of its contents.

          Viewing
all of the evidence in the light most favorable to the jury’s guilty verdict,
we hold that the jury could have rationally determined, beyond a reasonable
doubt, that appellant was guilty of possessing the .08 of a gram of
methamphetamine that Investigator Oglesby found in the lockbox.  See Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  We
overrule appellant’s first point.

The
Denial of Appellant’s Motion to Suppress

          In
his second point, appellant contends that the trial court erred by denying his
motion to suppress the evidence that the officers obtained in his house.  Before
trial, appellant filed a motion to suppress in which he generally contended
that all of the physical evidence that the State would offer at trial was
obtained in violation of federal and state law.  Appellant did not secure a
pretrial hearing on his motion.  At trial, he sought suppression of the
evidence only after Investigator Oglesby testified with no objection about getting
appellant’s consent to search the house and finding the evidence in the
lockbox.[8]

          The
State contends that appellant forfeited any complaint concerning the admission
of the evidence obtained by Investigator Oglesby in appellant’s house.  We
agree.  To preserve a complaint for our review, a party must have presented to
the trial court a timely request, objection, or motion that states the specific
grounds for the desired ruling if they are not apparent from the context of the
request, objection, or motion.  Tex. R. App. P. 33.1(a)(1); Layton v. State,
280 S.W.3d 235, 238–39 (Tex. Crim. App. 2009).  Further, the trial court must
have ruled on the request, objection, or motion, either expressly or
implicitly, or the complaining party must have objected to the trial court’s
refusal to rule.  Tex. R. App. P. 33.1(a)(2); Mendez v. State, 138
S.W.3d 334, 341 (Tex. Crim. App. 2004).  A reviewing court should not
address the merits of an issue that has not been preserved for appeal.  Ford
v. State, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009).

          In
Ratliff v. State, we explained,

          To preserve error about the illegal seizure of
evidence, a defendant must either file a motion to suppress and obtain a ruling
on the motion or timely object when the State offers the evidence at trial.  If
the defendant waits until the State offers the evidence at trial, the objection
to the evidence must be made before a witness gives substantial testimony about
it.

          In Tell v. State, an aggravated robbery
case, the defendant attempted at trial to suppress the admission of a ski mask
that police officers obtained from his residence without a search warrant or
consent.  908 S.W.2d 535, 538, 543 (Tex. App.—Fort Worth 1995, no pet.).  But
the defendant allowed a police officer to answer four questions about seizing
the ski mask before objecting to the evidence.  Id.  On appeal, we
concluded that “[b]ecause Tell failed to object at the time the ski mask was
mentioned and allowed further questions and answers before finally objecting,”
he “waived any error in the admission of the ski mask.”  Id. at 544.

          . . . .

          . . .  [A]ppellant filed a motion to suppress
evidence but did not obtain a pretrial hearing or ruling on the motion. . . . 
[A]ppellant then allowed [a detective] to testify about the evidence
extensively before objecting to the admission of the State’s physical evidence
. . . .

          We conclude
that, as in Tell . . . appellant’s failure to object at the time [the
detective] specifically described the physical evidence and explained how he
found that evidence forfeited any error associated with his objection to the
State’s later introduction of the evidence.

320
S.W.3d 857, 860–62 (Tex. App.—Fort Worth 2010, pet. ref’d) (some citations
omitted); see also Garza v. State, 126 S.W.3d 79, 82 (Tex. Crim.
App. 2004) (“By affording the judge an opportunity to rule on an
objection, he is able to decide whether the evidence is admissible.  If the
judge decides the evidence is inadmissible, the jury is shielded from hearing
it.”).[9]

          This
case is controlled by the principles explained in Ratliff.  Appellant filed
a motion to suppress evidence months before trial.  He did not obtain a ruling on
the motion, however, until after the lockbox had been admitted into evidence
and Investigator Oglesby had testified extensively, without objection, about
the contents of the lockbox, including the crystal-like substance that he
believed to be methamphetamine.  We hold that because appellant did not timely
obtain a ruling on his motion to suppress or object when testimony about the
evidence at issue was offered, he forfeited his complaint about the admission
of the evidence.  See Tex. R. App. P. 33.1(a)(1), (2); Ratliff,
320 S.W.3d at 860–62; Thomas v. State, 884 S.W.2d 215, 216–17 (Tex.
App.—El Paso 1994, pet. ref’d).  We overrule appellant’s second point.

The
Denial of Appellant’s Motion for Mistrial

          In
his third point, appellant contends that the trial court abused its discretion
by denying his motion for mistrial after sustaining a relevancy objection to
the admission of evidence.  During the State’s direct examination of Investigator
Oglesby, the prosecutor asked him, “As you were going through the bedrooms, was
there anything that caught your eye?”  Investigator Oglesby responded
affirmatively and then said that he had noticed a “rifle hanging on a gun
rack.”  Appellant objected to that testimony, and after the trial court discussed
the objection with the prosecutor, it sustained the objection and immediately instructed
the jury to disregard the testimony.  The court, however, denied appellant’s
motion for mistrial.[10]

          When
a trial court sustains an objection to evidence and instructs the jury to
disregard it but denies a defendant’s motion for mistrial, we must decide
whether the trial court abused its discretion by denying the mistrial.  Hawkins
v. State, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004); Orr v. State,
306 S.W.3d 380, 403 (Tex. App.—Fort Worth 2010, no pet.) (stating that we must
uphold the trial court’s denial of a motion for mistrial if the ruling was in
the zone of reasonable disagreement).  Only in extreme circumstances, when the
prejudice caused by improper conduct is “so prejudicial that expenditure of
further time and expense would be wasteful and futile,” will a mistrial be
required.  Hawkins, 135 S.W.3d at 77; see Simpson v. State, 119
S.W.3d 262, 272 (Tex. Crim. App. 2003) (“[O]rdinarily, a prompt instruction to
disregard will cure error associated with an improper question and answer.”), cert.
denied, 542 U.S. 905 (2004).  In determining whether a trial court
abused its discretion by denying a mistrial, courts balance three factors: (1)
the severity of the misconduct (prejudicial effect), (2) curative measures, and
(3) the certainty of conviction absent the misconduct.  See Hawkins,
135 S.W.3d at 77.  The trial court is in the best position to balance these
factors.  Orr, 306 S.W.3d at 404.

          Without
elaboration, appellant contends that the trial court’s “instruction to
disregard did not cure the error implanted in the jury’s mind.”[11] 
Appellant does not explain how Investigator Oglesby’s answer about the presence
of a rifle in the house influenced the jury to such an extent that the
instruction to disregard could not have cured any prejudice.  See id. (stating
that to warrant a mistrial, an improper question must be so clearly prejudicial
that the impression it makes on the jurors cannot be withdrawn).  “In the
absence of evidence that it did not, we presume the jury followed the trial
court’s instruction to disregard the improper question.”  Id. at 405.

          The
jury’s choice to convict appellant, which was necessarily based on its
disbelief of Williamson’s testimony that the methamphetamine belonged solely to
her, was not likely affected by one question and response about the presence of
a rifle in the house, because the presence of the rifle did not directly impact
Williamson’s credibility.  Also, although the State mentioned the rifle in its
opening statement, neither party discussed the presence of the rifle during
closing arguments, so Investigator Oglesby’s testimony about it was not likely the
jurors’ predominant consideration during their deliberation of appellant’s
guilt.  Thus, in considering the factors stated above, we hold that the trial
court did not abuse its discretion by denying appellant’s motion for mistrial. 
See id. at 403–04; Polk v. State, 170 S.W.3d 661, 668 (Tex.
App.—Fort Worth 2005, pet. ref’d) (holding that although a prosecutor
repeatedly violated the trial court’s instructions to not elicit improper
testimony, the trial court did not abuse its discretion by denying motions for
mistrial when the court gave prompt instructions to disregard the testimony).  We
overrule appellant’s third point.

Conclusion

          Having
overruled all of appellant’s points, we affirm the trial court’s judgment.

 

 

 

TERRIE LIVINGSTON
CHIEF JUSTICE



PANEL:  LIVINGSTON, C.J.; MEIER, J.; and
DIXON W. HOLMAN (Senior Justice, Retired, Sitting by Assignment).

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  July 28, 2011









[1]See Tex. R. App. P. 47.4.





[2]See Tex. Health & Safety Code
Ann. §§ 481.102(6), .115(b) (West 2010).





[3]Later, officers determined that the woman
looking out from the window was Angela Williamson, who also lived in the house.





[4]Scroggins
arrived at the house at a later point, and Officer Hollis arrested her.





[5]As
explained below, appellant disputes that he gave consent, and he presented
evidence that contradicts some of the facts recited in this section.





[6]After
Williamson finished her testimony, the State recalled Investigator Oglesby.  He
denied planting evidence, and he restated his testimony that appellant directed
Williamson to get the lockbox’s key and to unlock the lockbox.  He denied that
Williamson told him that the methamphetamine belonged to her.





[7]Other factors may link a defendant to the
possession of a controlled substance, such as the defendant’s presence during
the search, the defendant’s proximity to and the accessibility of the drugs,
whether the defendant possessed other contraband or narcotics when arrested,
and whether the defendant owned or had the right to possess the place where the
drugs were found.  Tucker v. State, 183 S.W.3d 501, 510 (Tex. App.—Fort
Worth 2005, no pet.).





[8]Outside
of the jury’s presence, appellant testified that he was renting the house where
the officers found the drugs, that he did not give consent for a search of the
house, and that Investigator Oglesby found the key to the lockbox and opened it
on his own.  On appeal, appellant argues that the evidence should have been
suppressed because (1) Scroggins’s arrest warrant did not authorize a search of
the house or the detention of appellant and Williamson, (2) if appellant gave
consent, he did not do so until the search had already started, and (3) the
search was conducted without a search warrant and without the existence of
probable cause or exigent circumstances.





[9]When
a pretrial motion to suppress is filed and the defendant requests a hearing on
the motion, error may be preserved despite a ruling by the trial court during
trial if the court informs the parties that it will not rule until all the
evidence sought to be suppressed has been admitted.  See Garza, 126
S.W.3d at 84–85.  There was no such circumstance in this case.





[10]The
State argues in part that the prosecutor’s question and Investigator Oglesby’s
response were proper.  Based on our analysis below, we decline to decide
whether the trial court correctly sustained appellant’s objection to the
testimony about the rifle.





[11]As
the State argues, although appellant was concerned about Investigator Oglesby’s
testimony about the rifle, he did not make objections to Williamson’s later
repeated testimony, which was elicited by his own questions, about the fact
that the officers had found a gun.